UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JUDITH A. SELLERS,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL,<br>Acting Commissioner of Social Security,<br><br>Defendant. | CAUSE NO.: 4:17-CV-67-HAB |

**OPINION AND ORDER**

Plaintiff Judith A. Sellers seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Plaintiff alleges that she has been disabled since August 2013 due to residual effects from left knee replacement, chronic bilateral knee pain, arthritis, and shortness of breath. In addition, in 2015, Plaintiff was diagnosed with depression and anxiety.

**ANALYSIS**

**A.    Standard of Review**

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630,

633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted).

In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of [his] reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

**B.     The ALJ's Decision**

A person suffering from a disability that renders her unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"); 42 U.S.C. § 1382c(a)(3)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A); § 1382c(a)(3)(B).

If a claimant's application is denied initially and on reconsideration, she may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1). An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a)[1]; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

---

[1] As discussed in *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003), the Act and implementing regulations regarding DIB (contained in Title II of the Act and 20 C.F.R. Pt. 404 of the regulations) and SSI (contained in Title XVI of the Act

3

Here, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 15, 2013, the alleged onset date. At step two, the ALJ found that Plaintiff had the severe impairment of carpal tunnel syndrome with history of left carpal tunnel release, de Quervain's tenosynovitis, history of right knee meniscectomy and total left knee replacement, chronic obstructive pulmonary disorder (COPD), irritable bowel syndrome, and obesity. The ALJ determined that Plaintiff's medically determinable mental impairments of anxiety and depression were non-severe because they did not cause more than minimal limitations in Plaintiff's ability to perform basic work activities.

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 19.) At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) because she was able to lift and/or carry twenty pounds occasionally and ten pounds frequently, and was able to sit, stand and/or walk for six hours in an eight hour workday. However, the Plaintiff would be unable to climb ladders, ropes, or scaffolds; crouch; kneel; or crawl. She could only occasionally climb ramps or stairs, stoop, or balance. Plaintiff had to avoid exposure to hazards, such as moving mechanical parts and unprotected heights or excessive vibration. Plaintiff's exposure to pulmonary

---

and 20 C.F.R. Pt. 416 of the regulations) are, for the most part, substantially identical. For convenience, the Court will generally cite herein to only the Title II statutes and regulations.

4

irritants like dust, fumes, and odors was restricted to occasional exposure. Plaintiff could frequently handle, finger, and feel bilaterally.

Based on the above RFC, the ALJ found that Plaintiff was able to perform her past relevant work as a cashier. Thus, he found that she was not disabled.

**C.     Residual Functional Capacity**

On appeal, Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence.[2] She submits that the ALJ ignored evidence showing that her depression and anxiety were severe impairments, including statements from her treating source, Dr. Ashley Williams, and Plaintiff's own allegations. Plaintiff contends that the ALJ committed reversible error when he did not consult a medical expert regarding the severity of her depression and anxiety. With respect to her physical limitations, Plaintiff asserts that the ALJ's conclusion that she could stand and/or walk six hours out of an eight-hour day was not supported by substantial evidence.

Residual functional capacity (RFC) measures what work-related activities a claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). It is the most the claimant can still do. *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1)). A claimant's RFC must be based upon the

---

[2] Although Plaintiff submits that the ALJ erred in his Step 2 analysis when he did not consider her mental impairments to be severe, the Court can proceed directly to the RFC analysis because the step two requirement of severity is "merely a threshold requirement." *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999); *see also Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010) (same). The ALJ identified other impairments that were severe, so the determination about her depression and anxiety at Step 2 were "of no consequence with respect to the outcome of the case. Because the ALJ recognized numerous other severe impairments, he was obligated to proceed with the evaluation process." *Castile*, 617 F.3d at 927.

medical evidence in the record and other evidence, such as testimony by the claimant or her friends and family. 20 C.F.R. § 404.1545(a)(3).

Here, the ALJ devoted considerable discussion to Plaintiff's physical impairments and limitations, particularly as it related to her left and right knees, carpal tunnel and De Quervain syndromes, asthma, and irritable bowel syndrome. The RFC analysis does not contain any discussion of Plaintiff's mental impairments, or limitations related thereto. This is, presumably, because the ALJ found those impairments to cause no more than mild limitations in the pertinent functional areas. (R. 19.) However, Plaintiff submits that those conclusions were based on a failure to consider the entirety of her treatment history, an erroneous credibility determination, and playing doctor.

Although an ALJ is not required to discuss every piece of evidence, he must consider all the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *See Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004); *Clifford v. Apfel*, 227 F.3d 863, 870–71 (7th Cir. 2000). The ALJ must also "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." See 20 C.F.R. § 416.923. An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

The ALJ found that Plaintiff had only mild limitations in the ability to relate to and work with supervisors, co-workers, and the public. He acknowledged her testimony that

6

she is short tempered when around children and does not socialize as much as she used to. However, he found that the record indicated that she was able to get out and socialize once her dosage of Celexa was increased, as noted in Exhibit 12F, and that "notes from mental status examinations longitudinally indicate that her mood is within normal limits." (R. 18.)

The treatment note at issue, Exhibit 12F, is from Plaintiff's visit with Dr. Williams on September 16, 2015. Dr. Williams noted Plaintiff's report that increasing the dosage of Celexa had helped, and that she was getting out and socializing. (R. 541.) The ALJ did not highlight any other aspect of the September 16, 2015, visit, or rely on Dr. Williams' notes from other exams except to refer to "mental status exams longitudinally."

Plaintiff argues that "[t]he ALJ's attempt to characterize the September 16 visit as a resolution of the claimant's depression and anxiety is a mischaracterization of the record." (Pl.'s Br. 13.) She contends that this same September 16, 2015, visit shows that Plaintiff continued moderate symptomology from depression and anxiety. Dr. Williams noted the PHQ-9 score was 12, whereas it had originally been 16. But scores of greater than or equal to 10 indicate "likely major depression." (R. 542.) In addition, her GAD-7 score had increased; it was recorded as "11 (previously 9, originally 12)." (R. 542.) Scores between 10 and 14 indicated "moderate anxiety." (R. 542.) Plaintiff was started on Wellbutrin to further help with mood and to help her quit smoking.

Plaintiff also takes issue with the ALJ's discussion of the September 16 visit to the exclusion of evidence that preceded and followed that visit. Plaintiff presented to Dr. Williams on May 12, 2015, complaining of anxiety, excessive crying, and easy agitation.

7

(R. 439.) On exam, Dr. Williams noted a depressed mood, a PHQ-9 score of 12 indicating "moderate" major depression, and a GAD-7 score of 14 indicating "moderate anxiety." (*Id.*) She diagnosed depression and anxiety and started Plaintiff on Prozac 20 mg. (R. 440.) After a June 12, 2015, visit, in which Dr. Williams noted a depressed mood, a PHQ-9 score of 8 indicating "mild" depression and a GAD-7 score of 10 indicating "moderate anxiety," Dr. Williams doubled Plaintiff's Prozac dosage. (R. 433–34.)

During Plaintiff's follow-up visit a month later, Dr. Williams wrote, "We increased Prozac to 40 mg last month for anxiety/depression and she feels it has not helped. She denies SI but still gets down on herself. She has been getting out and socializing." (R. 431.) On exam, Dr. Williams noted a depressed mood, a PHQ-9 score of 16 indicating "moderately-severe" major depression and a GAD-7 score of 12 indicating "moderate anxiety." (*Id.*) Dr. Williams changed Plaintiff's Prozac in favor of Celexa and scheduled a one-month follow up. On August 13, 2015, Dr. Williams noted that Plaintiff thought the Celexa "has helped. She denies SI but still gets down on herself. She has been getting out and socializing." (R. 543.) Dr. Williams increased Plaintiff's dose of Celexa to 40 mg. (*Id.*)

On March 16, 2016, Plaintiff returned to Dr. Williams, who noted the following in the subjective portion of her notes: "Her anxiety/depression, COPD, IBS, and GERD have been stable on her current regimen." (R. 532.) On exam, Dr. Williams noted a PHQ-9 score of 10, indicating moderate major depression, and GAD-7 score of 12, indicating moderate anxiety. (R. 533.)

The ALJ's decision cites to a single portion of a single visit to support an RFC reflective of no mental limitations. There is no discussion of the evidence that suggests

8

Plaintiff's depression and anxiety caused moderate symptomology that affected her daily activities. An ALJ cannot simply select evidence favoring his conclusion, but must "confront evidence that does not support his conclusion and explain why it was rejected." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2002). An ALJ must consider all relevant medical evidence and cannot cherry-pick facts that support a finding of non-disability while ignoring evidence supporting disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)). "A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (quoting *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)).

The Court is aware that terms like "slight," "mild," and "moderate," have no definitions in the social security regulations. *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698–99 (7th Cir. 2016). However, the ALJ's discussion does not permit meaningful judicial review, which requires an adjudicator to build a logical and accurate bridge between the evidence and his conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). In discussing the other functional areas related to mental impairments (other than social functioning), the ALJ relied on three things: mental status exams longitudinally; Plaintiff's reports to the physical consultative examiner; and Plaintiff's testimony regarding her daily activities. These discussions do not contain the required logical and accurate bridge.

For example, with respect to Plaintiff's ability to concentrate, persist, or maintain pace, the ALJ found that she has mild limitation because she reported to the physical

9

consultative examiner that she is able to perform her personal hygiene, cook, clean, shop, drive, and manage money. That consultative exam was conducted on November 10, 2014. Plaintiff did not suffer from mental health problems at that time; the first appearance in the record of treatment for depression and anxiety is May 12, 2015.

The ALJ cited the same consultative exam as evidence that Plaintiff had mild limitation in her ability to adapt and manage herself and to "regulate emotions, control behavior, and maintain well-being in a work setting." (R. 19.) The ALJ also cited to Plaintiff's testimony that she was able to drive her son to work and that her medications help relieve her symptoms. With regard to driving her son, Plaintiff testified that she drove a three-mile round trip to take her son to work in the morning and picked him up in the afternoon. (R. 41.) She testified that she had trouble because "sometimes I just don't really feel like getting out of bed to take him . . . but he doesn't . . . have a driver's license, so I have to." (R. 41.) The ALJ does not recognize this aspect of the testimony. More importantly, the ALJ does not explain how driving her son to work and back home establishes anything regarding Plaintiff's ability to adapt and manage herself and to regulate emotions, control behavior, and maintain well-being in a work setting. A reference to symptoms being eased with medication provides little helpful information without also considering which symptoms remain and to what degree.

With respect to Plaintiff's ability to understand, remember, or apply information, the ALJ found that Plaintiff had mild limitation because her abilities in these areas were "primarily limited by her physical impairment rather than her depression and anxiety."

(R. 18.) Although this may be accurate, an RFC must take into account the combined impact of Plaintiff's impairments. *See* 20 C.F.R. § 404.1545(a)(2) & (e).

Finally, although the ALJ stated that "notes from mental status examinations longitudinally" indicated that Plaintiff's mood was within normal limits, and she was alert and fully oriented with intact judgment, these statements are problematic because they suggest that the ALJ was relying on his own assessment of the medical records, rather than submitting them to review by a medical expert. *See, e.g.*, *Akin v. Berryhill*, 887 F.3d 314, 317 (7th Cir. 2018) (remanding because ALJ impermissibly interpreted MRI results himself and without the benefit of an expert opinion). Dr. Williams had not provided any opinions with respect to Plaintiff's functional limits, nor had any consultative exams been completed since the developments in Plaintiff's mental health. Thus, the Court cannot conclude that the ALJ's decision not to include any functional limitations in the RFC related to mental disorders is supported by substantial evidence.

Because the Court is remanding on these issues, the Court need not consider the remainder of the parties' arguments.

## CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS to the ALJ for further proceedings consistent with this Opinion and Order.

SO ORDERED on August 20, 2019.

                                              *s/ Holly A. Brady*
                                              JUDGE HOLLY A. BRADY
                                              UNITED STATES DISTRICT COURT